Richard J. COLLINS, Plaintiff–Appellant,

v.

Irving JAQUEZ, Mary Cox, T. Williams, Mr. Fischer, Mr. Woolford, Robert Cavalli, Frankie Nickels, Kelly Bradshaw, Larry Nutter, Le Ellen Eastwood, and Carol Soares, Defendants–Appellees.

No. 97CA2108.

Colorado Court of Appeals, Division II.

Nov. 9, 2000.

300

Richard J. Collins, Pro Se.

Ken Salazar, Attorney General, Paul S. Sanzo, First Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge VOGT.

Plaintiff, Richard J. Collins, appeals the trial court's order denying his motion for leave to proceed in forma pauperis and its judgment dismissing his complaint against defendants, Irving Jaquez, Mary Cox, T. Williams, Mr. Fischer, Mr. Woolford, Robert Cavalli, Frankie Nickels, Kelly Bradshaw, Larry Nutter, Le Ellen Eastwood, and Carol Soares, all of whom are officials or employees of the Colorado Department of Corrections (DOC). We affirm.

Plaintiff, a DOC inmate, filed a C.R.C.P. 106(a)(4) complaint seeking review of a prison disciplinary action. He then filed a motion for leave to proceed in forma pauperis, supported by an affidavit of indigency and a copy of his inmate account record for the preceding twelve months.

The trial court denied the motion, finding that denial was required pursuant to § 13–17.5–103, C.R.S.2000, since plaintiff had sufficient funds in his account to pay the $90 filing fee.

Plaintiff sought reconsideration of the order or, in the alternative, a final judgment dismissing his complaint so that he could appeal the in forma pauperis ruling. The trial court declined to reconsider its order and, instead, dismissed the complaint. It subsequently denied plaintiff's motions to reinstate the action and to declare § 13–17.5–103 unconstitutional.

## I.

■ Plaintiff contends that the trial court abused its discretion in denying his motion to proceed in forma pauperis. We disagree.

■ Whether a litigant is indigent and thus entitled to prosecute a civil action without payment of costs, as provided in § 13–16–103, C .R.S.2000, is generally a matter committed to the discretion of the trial court. However, in civil actions brought by prison inmates, the trial court's discretion is limited by § 13–17.5–103, one of several related statutes enacted in 1995 to address inmate civil actions. *See Harrison v. Wilson,* 998 P.2d 1110 (Colo.App.2000).

The version of § 13–17.5–103 in effect when plaintiff filed his complaint in 1997 provided:

> Any inmate who files a motion to proceed as a poor person, pursuant to § 13–16–103, in a state civil action against any public defendant shall attach to the motion copies of all inmate account records held by the detaining facility and copies of all transactions concerning the account made for the month in which the complaint is filed and eleven months before the state civil action is filed. If the inmate account demonstrates that the inmate has or had during the time period that is reviewed pursuant to this section, sufficient funds to pay the costs of filing and service of process, the motion to proceed as a poor person shall be denied.

Colo. Sess. Laws 1995, ch. 132 at 479.

The current version of the statute, in effect since 1998, states:

> An inmate seeking to bring a civil action or appeal a judgment in a civil action without prepayment of fees, in addition to filing any required affidavit, shall submit a copy of the inmate's trust fund account statement for the six-month period immediately preceding the filing of the complaint or notice of appeal, certified by an appropriate official at the detaining facility. If the inmate account demonstrates that the inmate has sufficient funds to pay the filing fee, the motion to proceed as a poor person shall be denied.

Section 13–17.5–103(1), C.R.S.2000.

Although the two versions of the statute differ as to certain particulars, both limit the trial court's discretion to determine indigen-

cy by providing that, if there are sufficient funds in the inmate account, the motion to proceed as a poor person *"shall"* be denied.

The inmate account records sub *-* nitted by plaintiff showed that over $1,800 had been deposited into his account during the twelve preceding months and that he had more than $100 in the account as late as one week before he filed his complaint. Thus, because defendant had sufficient funds in his account to pay the filing fee, the trial court was required to deny his motion.

Plaintiff's reliance on *Vance v. District Court*, 908 P.2d 1189 (Colo.App.1995), in support of a contrary conclusion is misplaced. In *Vance*, the majority held that denial of an inmate's in forma pauperis motion was an abuse of discretion and, in so holding, observed that: "Prisoners need not deprive themselves of the small amenities of life which they are allowed to acquire in prison in order to proceed in forma pauperis." *Vance v. District Court, supra*, 908 P.2d at 1192. However, the division also expressly noted that § 13–17.5–103, which limits the court's discretion in inmate cases, was not yet in effect when Vance filed his complaint and thus was not pertinent to its decision.

## II.

Plaintiff also contends that § 13–17.5–103 is unconstitutionally vague and that it violates his constitutional rights to due process, equal protection, and access to the courts. Again, we disagree.

Statutes are presumed constitutional, and parties challenging statutes on constitutional grounds ordinarily must prove unconstitutionality beyond a reasonable doubt. *City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427 (Colo.2000).

Plaintiff argues that the statute is constitutionally defective, both facially and as applied to him, because it does not allow a trial court to determine an inmate's "true income," and thus permits the court to deny a truly indigent inmate the right to proceed as a poor person. Specifically, plaintiff points out that the statute does not require or permit the court to consider either the source of the inmate's funds or the other financial obligations for which the inmate must use the funds in his account; does not take into account the fact that inmates such as plaintiff who are medically disabled have no ability to earn more than 25 cents per day while incarcerated; and does not require or allow the court to determine whether an inmate has any other assets or funding sources upon which he can rely if his account is depleted at the time he seeks review of a violation of his rights.

### A.

Plaintiff's main contention is that the defects of which he complains demonstrate that § 13–17.5–103 is unconstitutionally vague. We find no basis for concluding that the statute is void for vagueness.

A statute is unconstitutionally vague only if persons of common intelligence must guess at its meaning or differ as to its application. Words and phrases used in statutes are to be given their generally accepted meaning ar*-* need not be specifically defined if they are readily comprehensible, everyday terms. *Delta Sales Yard v. Patten*, 892 P.2d 297 (Colo.1995); *see also People v. Terry*, 720 P.2d 125 (Colo.1986).

Plaintiff does not contend, and we do not find, that there are any words or phrases in § 13–17.5–103 that are not readily comprehensible to persons of ordinary intelligence without further definition. Therefore, the statute is not void for vagueness.

### B.

Although plaintiff characterizes his constitutional argument primarily as a vagueness challenge, he adds, without elaboration, that the defects set forth above also violate his constitutional rights to due process, equal protection, and access to the courts. We conclude that § 13–17.5–103 does not violate any of these constitutional guarantees.

The right of all persons to have access to the courts is specifically provided for in Colo. Const. art. II, § 6, and has been recognized as a component of federal constitutional guarantees of due process and the right to

petition the government for redress of grievances. *See State Farm Mutual Automobile Insurance Co. v. Broadnax,* 827 P.2d 531 (Colo.1992).

Denying or limiting the right of indigent inmates to seek redress in the courts may implicate not only concerns for due process and access to the courts but also the right to equal protection of the laws. *See Williams v. District Court,* 160 Colo. 348, 417 P.2d 496 (1966) (dismissal of habeas petition without ruling on motion to proceed in forma pauperis violated federal and state due process and equal protection clauses); *see also Moody v. Corsentino,* 843 P.2d 1355 (Colo.1993) (recognizing prisoners' right of access to the courts but finding no violation of that right where inmate had money in his account which he could have spent for postage when jail officials refused to provide him with stamps to mail legal documents).

■ When a statute is challenged on due process grounds, and the statute infringes on a fundamental liberty or property interest, the state must prove that the challenged legislation is necessary to promote some compelling governmental interest. However, when no fundamental right is implicated, the legislation is subject to evaluation for substantive due process purposes under the rational basis test, which requires the state to demonstrate that the legislation bears some reasonable relationship to a legitimate governmental interest. *People v. Young,* 859 P.2d 814 (Colo.1993).

■ To determine whether a statute operates to deny equal protection of the laws, a court must similarly determine at the outset the level of scrutiny to be applied. If a fundamental right or a suspect class is involved, a strict scrutiny analysis is applied, under which the statute must be supported by a compelling state interest. In most other types of cases, a rational basis test applies and the statute will be upheld if it is rationally related to a legitimate state interest. *People v. Turman,* 659 P.2d 1368 (Colo.1983) (because prisoner's claim of denial of good-time credit does not implicate fundamental constitutional right, and because indigents are not a suspect class, rational basis test

applied to equal protection claim raised by prisoners who could not afford to post bail).

The federal courts have uniformly rejected constitutional challenges to a federal statute which, like the current version of § 13–17.5–103, requires payment of the civil filing fee in installments even by prisoners who are allowed to proceed in forma pauperis. *See Murray v. Dosal,* 150 F.3d 814 (8th Cir. 1998); *Tucker v. Branker,* 142 F.3d 1294 (D.C.Cir.1998), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1467, 143 L.Ed.2d 551 (1999); *Lucien v. DeTella,* 141 F.3d 773 (7th Cir.1998); *Shabazz v. Parsons,* 127 F.3d 1246 (10th Cir.1997); *Nicholas v. Tucker,* 114 F.3d 17 (2d Cir.1997), *cert. denied,* 523 U.S. 1126, 118 S.Ct. 1812, 140 L.Ed.2d 950 (1998); *Carson v. Johnson,* 112 F.3d 818 (5th Cir.1997); *Mitchell v. Farcass,* 112 F.3d 1483 (11th Cir.1997); *Roller v. Gunn,* 107 F.3d 227 (4th Cir.1997), *cert. denied,* 522 U.S. 874, 118 S.Ct. 192, 139 L.Ed.2d 130 (1997); *Hampton v. Hobbs,* 106 F.3d 1281 (6th Cir.1997).

While recognizing that prisoners' right of access to the courts encompasses even civil actions challenging prison disciplinary rulings, the federal courts have held that that right is not infringed by requiring payment of filing fees. Specifically, because the states are bound to provide prisoners with the basic necessities of life, an indigent prisoner is not forced to choose between such necessities and a lawsuit; rather, such prisoner faces the same economic choice as any civil plaintiff who must forgo other outlays in order to file a complaint. Further, neither prisoners nor indigents constitute a suspect class for equal protection analysis purposes.

Although the Colorado statute in effect when plaintiff filed his complaint differs somewhat from the federal law and the current version of § 13–17.5–103, we find no basis for reaching a conclusion different from that reached in the cases set forth above.

We note that—in contrast to the current Colorado statute and federal law—the pre 1998 version of § 13–17.5–103 required denial of in forma pauperis status not only if the inmate currently had sufficient funds to pay the filing fee, but also if he or she had had sufficient funds during the preceding eleven months. The federal cases do not address

the potential problem that could arise under that statute if an inmate had previously had sufficient funds but was without funds during the thirty-day period in which to seek review under C.R.C.P. 106. However, because plaintiff in fact had sufficient funds in his account during that thirty-day period, the statute was not unconstitutional as applied to him, and we do not decide whether it might infringe on the right of access in other circumstances.

While § 13–17.5–103 may have required plaintiff to forgo other purchases or outlays in order to keep enough funds in his account to pay the filing fee, that circumstance does not rise to the level of an infringement of his right of access to the courts. Nor is that right infringed because the statute does not require the court to consider the source of an inmate's funds or his ability to earn money in prison. *See Lucien v. DeTella, supra,* 141 F.3d at 774 ("That some of the income in the trust fund came from family members is irrelevant. Gifts become the property of the recipient.").

▮ Because the fundamental right of access to the courts was not infringed, no other fundamental right is at issue, and no suspect class is involved, we analyze plaintiff's remaining constitutional arguments under a rational basis test, which requires us to uphold the statute if it bears a reasonable relationship to a legitimate state interest. *See People v. Young, supra* (due process analysis); *People v. Turman, supra* (equal protection analysis).

In enacting § 13–17.5–103 and the related provisions concerning inmate lawsuits in 1995, the general assembly stated:

(1) The general assembly declares that the state has a strong interest in limiting substantially frivolous, groundless, or vexatious inmate lawsuits that impose an undue burden on the state judicial system. While recognizing an inmate's right to access the courts for relief from unlawful state actions, the general assembly finds that a significant number of inmates file substantially frivolous, groundless, or vexatious lawsuits.

(2) The general assembly, therefore, determines that it is necessary to enact legislation that promotes efficiency in the disposition of inmate lawsuits by providing for preliminary matters to be determined by magistrates and to provide for sanctions against inmates who are allowed to file claims against public defendants and whose claims are dismissed as frivolous.

Section 13–17.5–101, C.R.S.2000.

The general assembly's stated intent to limit inmate lawsuits that impose an undue burden on the state judicial system is a legitimate state interest. Requiring inmates who are able to do so to pay the cost of filing civil actions is rationally related to furthering that interest. Therefore, the statute does not violate constitutional guarantees of due process or equal protection.

The order and judgment are affirmed.

Judge JONES and Judge PIERCE * concur.