S07A0079. GLENN v. THE STATE.
S07A0080. DUNLAP v. THE STATE.
(644 SE2d 826)

HUNSTEIN, Presiding Justice.

Appellants Nathaniel Glenn and John Dunlap challenged the constitutionality of OCGA § 16-17-1 et seq. ("the Act"), after they were charged with violating OCGA § 16-17-2, which prohibits the making of "payday loans," i.e., loans of $3,000 or less with illegal interest rates.[1] See *USA Payday Cash Advance Centers v. Oxendine*, 262 Ga. App. 632, 633 (585 SE2d 924) (2003) (" 'payday loan is a loan of short duration, typically two weeks, at an astronomical annual interest rate' "). First time violators of OCGA § 16-17-2 are guilty of a misdemeanor of a high and aggravated nature. Id. at (d). Appellants were both convicted of multiple violations of OCGA § 16-17-2[2] and they

---

[13] *Willingham v. State*, 279 Ga. 886, 889 (622 SE2d 343) (2005).

[1] OCGA § 16-17-2 (a) provides that it is "unlawful for any person to engage in any business, in whatever form transacted, . . . which consists in whole or in part of making, offering, arranging, or acting as an agent in the making of loans of $3,000.00 or less," unless the loans are otherwise permitted or lawful under one of the exceptions set forth in OCGA § 16-17-2 (a) (1)-(4).

[2] Appellant Glenn was charged with 49 misdemeanor violations of OCGA § 16-17-2; appellant Dunlap was charged with 46 such violations. Both were charged with one RICO violation each predicated on the illegal payday loan violations. The trial court denied their constitutional challenges to the Act and, after a bench trial, found appellants guilty on all counts

appeal, contending that the trial court erred by rejecting their equal protection and vagueness challenges to the Act. For the reasons that follow, we affirm.

1. Appellants contend that OCGA § 16-17-2 denies them equal protection of the law because it grants explicit exemptions to out-of-state banks that make payday loans in Georgia[3] and the local agents of such out-of-state banks, when operating under certain defined financial circumstances,[4] thereby treating out-of-state banks differently than in-state residents. To prevail on their equal protection challenge, appellants have the burden of showing initially that they are similarly situated to the out-of-state banks accorded the different treatment. See *Farley v. State*, 272 Ga. 432, 433 (531 SE2d 100) (2000). Appellants cannot make that showing. We agree with the State that appellants are not similarly situated with the out-of-state banks designated in OCGA § 16-17-2 (a) (3) because appellants, as in-state lenders, are subject to Georgia statutes regulating or restricting high interest rates on loans, whereas the out-of-state banks are not. See 12 USC § 1831d (a) (bank may, "notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section," charge interest at rate allowed by state where bank is chartered). This case is thus distinguishable from the case on which appellants rely, *Ciak v. State*, 278 Ga. 27 (1) (597 SE2d 392) (2004), which involved a statute treating similarly situated drivers differently.

Even if appellants were similarly situated, "[a]n equal protection challenge is assessed under the 'rational relationship' test when [as here] neither a suspect class nor a fundamental right is affected by the challenged statute. [Cit.]" *Love v. State*, 271 Ga. 398, 400 (1) (517 SE2d 53) (1999). Under that test, the legislative classification created by OCGA § 16-17-2 (a) can withstand constitutional assault when the classification is based on rational distinctions and bears a direct and real relation to the legitimate object or purpose of the legislation. See *Roberts v. Burgess*, 279 Ga. 486 (1) (614 SE2d 25) (2005). In light of the

---

and sentenced them to 15 years probation on the felony RICO count and twelve months probation (concurrent to the RICO charge but consecutive to each other) on each illegal payday loan count.

[3] OCGA § 16-17-2 (a) (3) exempts

a bank or thrift chartered under the laws of the United States, a bank chartered under the laws of another state and insured by the Federal Deposit Insurance Corporation, or a credit card bank [when the enumerated entity] is not operating in violation of the federal and state laws applicable to its charter.

[4] Entities exempt under OCGA § 16-17-2 (a) (3) may legally make payday loans in Georgia through a local agent provided that the agent is not the "de facto" lender, as established where "the entire circumstances of the transaction show that the purported agent holds, acquires, or maintains a predominant economic interest in the revenues generated by the loan." OCGA § 16-17-2 (b) (4).

protected status of out-of-state banks under Federal law, we conclude that the Legislature had a rational basis for creating a class based on those in-state payday lenders who are subject to State regulation and we hold that the classification bears an obvious and direct relation to the legitimate purposes of the legislation as set forth in OCGA § 16-17-1 (c), (d) (deterring illegal, unconscionable payday lending in Georgia because of its adverse effect on the citizens of this State).

Therefore, the trial court did not err by denying appellants' equal protection challenge to the Act.

2. Appellants also assert the Act is unconstitutionally vague because it does not specifically prohibit the particular lending schemes appellants utilized, namely, selling "land options with rebates" (appellant Glenn) and "cashing checks" (appellant Dunn). We find no merit in this contention. The Legislature expressly recognized that "various payday lenders have created certain schemes and methods in order to attempt to disguise these transactions," OCGA § 16-17-1 (c), and accordingly defined the prohibited conduct in a manner to encompass all of the creative ways payday lenders might use to avoid the Act.[5] "Even though a statute may be marked by ' "flexibility and reasonable breadth, rather than meticulous specificity," ' if it is nonetheless 'clear what the [statute] as a whole prohibits,' the statute is not unconstitutionally vague. [Cit.]" *Rozier v. State*, 259 Ga. 399, 400 (1) (383 SE2d 113) (1989). See also *State v. Old South Amusements*, 275 Ga. 274, 276 (564 SE2d 710) (2002) (Legislature not required to draft statutes with mathematical precision). We find the Act's prohibition against payday loans, in whatever form transacted, sufficiently definite to satisfy due process standards.[6]

3. The evidence adduced at the bench trial amply authorized the trial court to find beyond a reasonable doubt that appellants were guilty of violating OCGA § 16-17-2 (a). *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. All the Justices concur.*

DECIDED MAY 14, 2007.

*Gilbert J. Murrah*, for appellants.
*Joseph K. Mulholland, District Attorney*, for appellee.

---

[5] Hence, the Legislature authorized trial courts in OCGA § 16-17-6 to review transactions "in their entirety in order to determine if there has been any contrivance, device, or scheme used by the lender" to avoid OCGA § 16-17-2 (a).

[6] Although appellants also assert in their enumeration that the statute is overbroad, they do not support this contention with any argument or citation of authority and thus it is abandoned. Supreme Court Rule 22.

*Thurbert E. Baker, Attorney General, Sidney R. Barrett, Jr., Assistant Attorney General*, amici curiae.